No. 28,559.

Alberta Jent, *Appellee,* v. The Postal Telegraph Cable Company, *Appellant.*

(275 Pac. 1096.)

Opinion filed April 6, 1929.

*John E. McFadden, O. Q. Claflin, Jr.,* both of Kansas City, and *Henry N. Ess,* of Kansas City, Mo., for the appellant.

*Arthur J. Stanley, Arthur J. Stanley, Jr.,* and *H. G. Wierenga,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one for damages for personal injuries sustained when plaintiff was struck by a bicycle ridden by defendant's messenger boy. Plaintiff recovered, and defendant appeals.

Minnesota avenue in Kansas City, Kan., is an east and west street, which is intersected by Seventh street, a north and south street. A traffic signal overhangs the center of the intersection. On the day of the accident plaintiff walked westward on the sidewalk on the north side of Minnesota avenue, stopped at the corner of the two streets, looked at the traffic signal, and saw the green light which permitted her to proceed with the traffic westward. She looked for vehicles, saw none and started to cross Seventh street. When three or four feet from the Seventh street curbing she was struck on the left side and was knocked down, her head toward the north and her face toward the west. After some seconds, "probably a minute," she got back on her feet, turned around and saw a boy with a bicycle south and east of her, near the curb. He was scrambling around, picking up some envelopes. He sort of lifted and pushed his bicycle over to her, said he did not mean to do it, he could not help it, and he was sorry. She said "All right," and walked

·on. She identified the boy as an employee of defendant. She had ·seen him before, had waited on him in a restaurant, and he wore the ·cap and uniform of a messenger of defendant.

When plaintiff turned around after rising from the street, she saw another boy further to the south of the place where she was struck —perhaps fifteen feet away. He was sitting on a bicycle, with his feet on the ground, and was facing toward the north. She did not ·speak to him. She had not seen him before the accident, did not see him after the accident, and testified she did not believe she would recognize him. On cross-examination she undertook to tell how he was dressed. The boy testified he was not dressed in the manner she described. It appeared at the trial that the messenger boy's name was Cecil Keele, and when the accident occurred he was in the course of his employment by defendant. The other boy's name was Leo Burton.

Both boys testified that as they were riding their bicycles westward on the north side of Minnesota avenue, a westbound automobile passed them, and at the intersection turned northward into Seventh street. Cecil testified the automobile slowed down when it came to the intersection, he was almost beside it and four or five feet from it, and it cut to about the center of Seventh street. Leo testified the automobile went almost to the center of Seventh street, and turned quickly toward the north. Cecil testified he was not expecting the automobile would turn, and he turned northward to avoid running into it. Leo testified he was "right on top of the car" before he saw it, and he was obliged to turn northward to avoid running into it. Cecil testified he passed behind plaintiff and went on northward about twelve feet, intending to circle back into Minnesota avenue. He said he turned northward right around the curb and within a foot of it. When twelve or fourteen feet from the corner he stopped to get a clear road to turn and go back, and as he stopped he noticed the boy, Leo Burton, hit the woman. Cecil said plaintiff was six or eight feet west of the curb when he passed behind her. Both boys testified Leo was eight or ten feet behind Cecil. Leo testified that when he turned the corner Cecil was eight or ten feet ahead of him, but he said he went around on Cecil's left-hand side, and struck plaintiff and knocked her down.

After the accident and "just as a matter of form," Cecil had Leo go to defendant's office and tell the manager that he, Leo, struck plaintiff. Leo testified he went up and took the blame; Cecil was

his friend anyway, and Leo knew that if Cecil hit the woman it would cost him his job. Leo's brother took Cecil's place after Cecil quit.

The petition contained the following allegation respecting defendant's negligence:

"That she received her said injuries by reason of the wrongful and neglectful acts of the said employee of the defendant for the reason that this plaintiff had no warning of the approach of said bicycle, and that said employee saw this plaintiff and carelessly and negligently ran into her with said bicycle, and thereby caused the said injuries heretofore described."

The answer denied generally the allegations of the petition, and denied specially that plaintiff was struck by an employee of defendant.

Defendant contends negligence was not established by the evidence. Cecil said he saw the plaintiff, told where she was in the street, said she was looking west and walking west, and said he saw her at the time he turned north to avoid striking the automobile. Both boys said they were going slowly—five or six miles an hour—a little faster than a walk. Cecil testified that at the rate of speed he was going he could stop his bicycle almost instantly, and when he turned toward the north he turned quickly, and did not try to stop. Plaintiff testified that when she reached Seventh street she was walking about the middle of the sidewalk along the north side of Minnesota avenue, that she continued in the same direction, and that she had gone into Seventh street only three or four feet when she was struck. Cecil was south of the Minnesota avenue curb line, and the automobile was four or five feet farther out from the curb line. Both boys testified that the automobile (which plaintiff said she did not see) went about to the center of Seventh street in making its turn, and Leo testified that when the automobile got about half way in the middle of the street, the driver decided he wanted to turn quickly. The result is, the jury was warranted in believing Cecil did not need to turn sharply toward the north; he could have stopped and should have stopped, and instead of doing so he blunderingly ran into plaintiff.

Defendant contends the negligence pleaded was not established, in that there was no evidence plaintiff was not warned. Assuming this to be true, pleaded negligence, seeing plaintiff and carelessly running into her was established, and the variance was immaterial. However, the testimony covered all the details of the accident, and

while the word "warning" was not used, the proof disclosed that plaintiff had no warning.

Defendant contends the court erred in not submitting to the jury the question whether plaintiff was warned. The contention is based on an interpretation of the court's instruction No. 10. The third instruction submitted to the jury the negligence pleaded in the petition, and the tenth instruction requested the jury to find from the evidence, "substantially as alleged in plaintiff's petition," that an employee of defendant negligently ran against plaintiff.

Defendant contends the court erred in refusing to give four requested instructions. Numbers four and five related to the subject of negligence and warning, which have been discussed. Numbers two and three related to identity of the person who struck plaintiff, and were sufficiently covered by instruction No. 10.

Defendant contends the court erred in refusing to submit to the jury the following special questions:

"(1) Did the plaintiff see the boy who ran into her with the bicycle, either at the time of the collision or before the collision?

"(2) If you answer the foregoing question in the affirmative, state the name of the boy who ran into plaintiff.

"(3) If you answer question No. 1 in the affirmative, state the place where said boy was at the time the plaintiff last saw him before the collision."

Plaintiff testified she did not see where the bicycle came from or see it before it struck her; she did not know whether it came north on Seventh street or turned north from Minnesota avenue; she did not know that people turned north on Seventh street from Minnesota avenue on the green light; she looked at the light and then walked straight ahead; and she did not see either of the boys or bicycles until after she got up and turned around after being knocked down. This testimony was not disputed by anybody, and Cecil testified that when he turned north she was walking west and looking west. Since there was no basis in the evidence for an affirmative answer to question No. 1, it was not error to refuse to propound it. Answers to the second and third questions were not required unless the first question was answered affirmatively.

So far as the question related to identity of the boy who propelled his bicycle against plaintiff, the general verdict was a sufficient answer, because the court's instructions required the jury to find, as a prerequisite to return of a verdict for plaintiff, that the

boy was an employee of defendant acting within the scope of his employment.

There was sufficient evidence that plaintiff suffered physical injuries as a result of the blow she received to sustain the verdict.

The judgment of the district court is affirmed.